**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 3, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

_____

| |
|---|
| UTAH REPUBLICAN PARTY, |
| |
|     Plaintiff - Appellant, |
| |
| and |
| |
| CONSTITUTION PARTY OF UTAH, |
| |
|     Plaintiff and Intervenor, |
| |
| v. |
| |
| GARY R. HERBERT, in his official capacity as Governor of Utah; SPENCER J. COX, in his official capacity as Lieutenant Governor of Utah, |
| |
|     Defendants - Appellees. |

No. 16-4058
(D.C. No. 2:14-CV-00876-DN)
(D. Utah)

_____

### ORDER AND JUDGMENT[*]
_____

Before **PHILLIPS**, **McHUGH**, and **MORITZ**, Circuit Judges.
_____

The Utah Republican Party (URP) appeals the district court's denial of URP's

several untimely requests for an extension of time to file a post-judgment motion for

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

attorney's fees and costs.  Because we conclude the district court did not abuse its discretion in finding URP failed to show good cause for an extension, we affirm.

## Background

URP and an intervening plaintiff, the Constitution Party of Utah, filed suit against Utah challenging amendments to Utah's election code.  In the course of the litigation, URP repeatedly missed filing deadlines and the district court repeatedly reminded URP's counsel, Marcus Mumford, about the need to comply with deadlines.  The court eventually sanctioned URP by striking its late-filed motion for summary judgment and, after URP missed yet another deadline, ordered URP to retain co-counsel to ensure compliance with deadlines.  Ultimately, the district court granted partial summary judgment in favor of URP and the Constitution Party, finding one provision of the challenged law unconstitutional, and entered judgment on November 23, 2015.

Under Fed. R. Civ. P. 54(d)(2)(b), URP and the Constitution Party had until December 7, 2015, to file a motion for attorney's fees and costs.  *Id*. (requiring motion for costs and attorney's fees to be filed "no later than 14 days after the entry of judgment").  The Constitution Party timely filed its motion but URP did not. Instead, on December 8th, at 12:01 a.m., URP filed a Fed. R. Civ. P. 6(b)(1) motion seeking a one-day extension (or until the end of the day on December 8) to file its motion.  In support, Mumford recited that he had attended an out-of-state mediation proceeding December 2-5, and as a result he was unable to obtain a required affidavit from co-counsel.  Mumford also indicated that he had learned early the morning of

2

December 7 that his paralegal, whom he relied upon to finalize billing statements and invoices, had been hospitalized the night before for back pain. When Utah objected to the extension, Mumford filed a reply. In it, he expanded his reasons for the extension, pointing out that the 14-day period after judgment included the Thanksgiving weekend. Mumford also offered that he had planned to obtain co-counsel's affidavit on December 7 but didn't hear from him that day. According to Mumford, he learned after filing the extension request that co-counsel had unexpectedly left the state to assist in moving his mother to a nursing home.

Later in the day on December 8, Mumford filed a second extension request seeking a longer period of time to file the motion. In this motion, Mumford indicated that he anticipated his co-counsel would return to work December 9 but that "in an abundance of caution" he sought a two-day extension, or until December 10, to file his motion. Utah again objected.

But Mumford didn't file his motion for attorney's fees and costs on or before December 10. Instead, at 11:58 p.m. on December 10, Mumford filed a third extension request, this time seeking one additional day to file the motion. In support, Mumford recited that he hadn't obtained necessary information from co-counsel until 4:30 p.m. that day and that his paralegal was working from home on bed rest. Mumford finally submitted URP's attorney's fees and costs motion on December 11, four days late.

The district court denied all of URP's extension requests, concluding URP demonstrated neither good cause for an extension nor excusable neglect for the late

3

filing of its three requests.  URP filed a motion for reconsideration under Fed. R. Civ. P. 59(e).  In it, Mumford offered a new reason for URP's untimely extension request, suggesting that he was involuntarily and unexpectedly logged off of CM/ECF just before midnight.  Mumford attached a CM/ECF log record to support his assertion. The district court denied URP's reconsideration motion and URP appeals that denial as well as the denial of his extension motions.

## Analysis

We review the denial of both motions for abuse of discretion.  *Buchanan v. Sherrill*, 51 F.3d 227, 228 (10th Cir. 1995) (stating standard for reviewing denial of extension of time under Rule 6(b)(1)); *Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997) (stating same for Rule 59(e)).  Under that standard, a district court's "decision will not be disturbed unless the reviewing court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances."  *Bishop v. Corsentino*, 371 F.3d 1203, 1206 (10th Cir. 2004) (internal quotation marks omitted).

Under Rule 6(b)(1), a district court may extend a deadline for "good cause."  If the request is made before the original deadline, the court need only find good cause for the extension.  *Rachel v. Troutt*, 820 F.3d 390, 395 (10th Cir. 2016); Rule 6(b)(1)(A).  But if the extension request is made after the original deadline, as it was here, the court must also determine whether "the party failed to act because of excusable neglect."  Rule 6(b)(1)(B).  In other words, an extension can only be granted for good cause regardless of when the extension was requested.  But if the

extension request was filed after the original deadline, the court must also determine whether the failure to timely meet the deadline was due to excusable neglect. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 873 (1990) (holding that under Rule 6(b)(1), "a post-deadline extension . . . is permissible only where the failure to meet the deadline was the result of excusable neglect") (internal quotation marks omitted); 4B Charles Alan Wright, Arthur R. Miller & Adam N. Steinman, *Federal Practice and Procedure* § 1165 (4th ed. 2015) ("[T]he district court may order an extension even after the expiration of a specified time period, but only for "good cause" and where the party's failure to act in a timely fashion was the result of "excusable neglect.").[1]

As noted, the district court concluded that URP failed to show either good cause for an extension or excusable neglect for its untimely extension requests. URP challenges both findings on appeal. But because we conclude the district court did not abuse its discretion in finding URP failed to show good cause, we do not reach URP's challenge to the district court's findings regarding excusable neglect.

---

[1] URP appears to mistakenly interpret Rule 6(b)(1) to require a showing of good cause if the request is made before the original deadline, but require only a showing of excusable neglect if the request is filed after the original deadline. This interpretation is contradicted by the plain language of Rule 6(b)(1), which requires good cause for all extensions. URP also mistakenly asserts that it timely filed its second and third extension requests because they were filed within the time requested in its initial extension request. But Rule 6(b)(1)(A) provides that a timely extension request is one filed "before the original time or its extension expires." Because the district court never granted URP's initial extension request, all three requests were untimely filed after the original deadline.

In reviewing this issue, we are mindful that Rule 6(b)(1) "should be liberally construed to advance the goal of trying each case on the merits." *Rachel*, 820 F.3d at 394. But "an enlargement of the time period is by no means a matter of right." *Eller v. Trans Union*, *LLC*, 739 F.3d 467, 478 n.10 (10th Cir. 2013) (internal quotation marks omitted).

"'[G]ood cause' requires a greater showing than 'excusable neglect.'" *Broitman v. Kirkland (In re Kirkland)*, 86 F.3d 172, 175 (10th Cir. 1996). The two standards, although "interrelated," are not identical. *Id*. Excusable neglect requires "some showing of good faith on the part of the party seeking the enlargement and some reasonable basis for noncompliance within the time specified." *Id*. (internal quotation marks omitted). We have said that "[w]ithout attempting a rigid or all-encompassing definition of 'good cause,' it would appear to require *at least as much* as would be required to show excusable neglect." *Id*. (internal quotation marks omitted). "Good cause comes into play in situations in which there is no fault— excusable or otherwise. In such situations, the need for an extension is usually occasioned by something that is not within the control of the movant." *Bishop*, 371 F.3d at 1207 (internal quotation marks omitted) (interpreting good cause for an extension of time to appeal under Fed. R. App. P. 4(a)(5)). It requires the moving party to show the deadline "cannot be met despite the movant's diligent efforts." *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir.

2014) (brackets and internal quotation marks omitted) (interpreting good cause to modify a scheduling order under Fed. R. Civ. P. 16(b)(4)).[2]

In arguing that the district court abused its discretion in finding URP hadn't established good cause for the extension, URP relies primarily upon Mumford's recitations in his several motions for extension regarding the unexpected unavailability on December 7 of Mumford's co-counsel and paralegal. But this argument ignores important context—namely, Mumford's decision to wait until the day the motion was due to prepare and assemble the motion, including obtaining an affidavit from counsel and finalizing his own billing statements and invoices. Had he diligently attempted in the prior thirteen days to obtain the affidavit and prepare the motion, the unavailability of his co-counsel and paralegal on the fourteenth day would not have necessitated an extension. *See Madden v. Texas*, 498 U.S. 1301, 1304 (Scalia, Circuit Justice 1991) (finding no good cause for extension to file writ of certiorari due to death of counsel's father because counsel had not worked

_____

[2] In contrast, excusable neglect "is not limited to situations where the failure to timely file is due to circumstances beyond the control of the filer." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 391 (1993). It is an "equitable" standard, and courts should consider four factors when determining whether neglect is excusable: (1) "the danger of prejudice"; (2) "the length of the delay and its potential impact on judicial proceedings"; (3) the reasons for the delay which includes "whether it was within the reasonable control" of the party seeking to show excusable neglect; and (4) whether that party acted in good faith. *Id.* at 395. URP appears to contend that the district court was required to consider these factors in determining the existence of both excusable neglect and good cause. To the contrary, we have held that a good cause analysis doesn't require application of the *Pioneer* factors. *Kirkland*, 86 F.3d at 175 (holding *Pioneer*'s factors need not be applied when analyzing whether there is good cause for failure to make timely service under former Fed. R. Civ. P. 4(j)).

diligently on the petition and provided no explanation "why the task has been left to the last minute"). "The lesson to the federal plaintiff's lawyer is not to take any chances." *Cox v. Sandia Corp.*, 941 F.2d 1124, 1126 (10th Cir. 1991) (internal quotation marks omitted) (finding no good cause under Fed. R. Civ. P. 4(j) for failure to effect service when counsel waited to hire a process server).

Of course, URP suggests that Mumford did offer an explanation to justify his last minute efforts—i.e., Mumford's assertion that he participated in mediation from December 2 to December 5. But we have held that the fact that the movant's counsel is professionally engaged in other matters is not sufficient, as a matter of law, to show excusable neglect. *United States v. Mitchell*, 464 F.3d 1149, 1152 (10th Cir. 2006), *rev'd on other grounds*, 551 U.S. 1129 (2007). Thus, it most certainly isn't sufficient to show good cause, which requires a greater showing. Moreover, Mumford doesn't assert that his participation in the mediation was a surprise. Nor does he suggest that he made any effort, much less a diligent effort, to comply with the deadline, knowing that he would be engaged in other matters for at least a few days of the 14-day time period.

URP's arguments also disregard the broader context in which the district court considered Mumford's out-of-time request to extend the motion deadline. Specifically, throughout the course of this litigation, the district court not only repeatedly warned Mumford about his multiple failures to comply with deadlines, but eventually sanctioned Mumford and required that he obtain co-counsel because of these failures. URP cites no authority, and we are aware of none, that would require

8

the district court to view Mumford's belated request to extend this particular deadline in a vacuum.[3]

And importantly, Mumford's dilatory practices continued even after he had filed his untimely request for an extension of the December 7 deadline. Mumford knew during the day on December 7 that his paralegal and co-counsel were unavailable, yet he waited until midnight to file his extension request. And although in that motion Mumford advised the court he would file the attorney's fees motion by the end of the day on December 8, he failed do so. Instead, Mumford filed a second request for extension later in the day on December 8, this time indicating he would file the motion on December 10. But instead of filing the motion on December 10, Mumford filed a third request for extension at 11:58 p.m. on December 10 seeking one additional day to file the motion. The district court properly considered all of these circumstances in finding URP failed to demonstrate good cause in denying the motions for extension.

Finally, URP argues the district court abused its discretion by not liberally applying Rule 6(b). But the liberal-construction rule is "to effectuate the general purpose of seeing that cases are tried on the merits." *Rachel*, 820 F.3d at 394 (internal quotation marks omitted). Here, the court's denial of URP's extension

---

[3] We need not recite Mumford's history of missed deadlines, with which the parties are quite familiar, and Mumford concedes he missed eight pre-judgment deadlines.

request impacts URP's ability to recover its costs and attorney's fees, not the merits of its case.

We have no hesitancy in concluding that under the circumstances presented here, the district court did not abuse its discretion in refusing to afford URP a liberal interpretation of Rule 6(b)(1) or in finding URP failed to show good cause for an extension. *See Hendry v. Schneider*, 116 F.3d 446, 449 (10th Cir. 1997) (holding a district court's ruling on whether there is good cause for an extension "will not be disturbed . . . . [unless it] is arbitrary, capricious, or whimsical"). Thus, we need not reach URP's arguments that it showed excusable neglect in filing untimely extension requests.

Affirmed.

Entered for the Court

Nancy L. Moritz
Circuit Judge